# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 27, 2023
Lyle W. Cayce
Clerk

No. 22-70006

Brent Ray Brewer,

*Petitioner—Appellant,*

versus

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division,*

*Respondent—Appellee.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:15-CV-50

Before Jones, Oldham, and Wilson, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

    Brent Ray Brewer was convicted of capital murder and sentenced to death by a Texas court in 1991. The United States Supreme Court ordered Brewer resentenced in 2007. After he was sentenced to death a second time, Brewer exhausted his state remedies and then petitioned for federal habeas relief. The district court denied his petition and did not certify any questions for appellate review. Brewer now seeks a certificate of appealability ("COA") under 28 U.S.C. § 2253(c)(2). For the following reasons, we DENY his application for a COA.

No. 22-70006

I. Background

On April 26, 1990, then 19-year-old Brent Brewer and his girlfriend, Kristie Nystrom, approached Robert Laminack outside his flooring store in Amarillo, Texas and asked for a ride to the Salvation Army. Laminack invited the young couple to get in his truck; Nystrom took the front seat, and Brewer sat in the back. While en route, Brewer grabbed Laminack and began to stab him in the neck with a butterfly knife. Laminack begged for his life while obeying Brewer's demand to hand over his keys and wallet. He was wounded in the carotid artery and jugular vein. After losing consciousness, he bled to death.

In 1991, Brewer was convicted of capital murder and sentenced to death. A multi-year saga of direct and collateral challenges to his conviction and sentence ended in 2007 when the United States Supreme Court, ruling on the adequacy of jury instructions for the sentencing phase, ordered that Brewer be resentenced. *See Brewer v. Quarterman*, 550 U.S. 286, 127 S. Ct. 1706 (2007).

In a 2009 retrial of the sentencing, the state presented many of the same witnesses and evidence as it had at Brewer's first capital murder trial. These included: Robert Laminack's widow and daughter; numerous crime scene photographs; blood spatter testimony and other physical evidence, such as Brewer's bloody fingerprint on the butterfly knife found at the crime scene; testimony that Brewer "smirked and giggled" when describing to a witness how Laminack begged for his life; testimony that Brewer told a former cellmate that Laminack pleaded "please don't kill me, Boy" as Brewer stabbed him; and a photograph of Brewer "shooting the finger" while exiting the courthouse around the time of his arraignment for Laminack's murder. Dr. Richard Coons, a forensic psychiatrist, testified that there was

a probability that Brewer would commit criminal acts of violence in the future, as he had opined before at Brewer's 1991 trial.

Unlike in 1991, Kristie Nystrom, Brewer's former girlfriend and accomplice in the murder of Robert Laminack, agreed to testify in order to obtain a favorable parole consideration. Nystrom gave a chilling firsthand account of the killing, which contained details the 1991 jury did not hear, such as that Brewer began to stab Laminack *before* asking for his wallet or truck keys.

The defense presented testimony from Brewer's mother and sister, who described Brewer's childhood and teenage years, and numerous correctional officers, who testified that Brewer had been an exemplary inmate for nearly two decades both on and off death row. The defense also used Dr. John Edens, a forensic psychologist, to attack Dr. Coons's methodology as having no basis in legitimate science. Finally, in order to counter the state's aggravating evidence and show Brewer's remorse, the defense put Brewer on the stand. He described his childhood, his former relationship with Kristie Nystrom, and the murder of Robert Laminack. He said he was sorry for what he had done to Laminack and his family.

A unanimous jury again found beyond a reasonable doubt that there was a probability that Brewer would commit criminal acts of violence that would constitute a continuing threat to society. The jury also found that the mitigating evidence presented by defense counsel was insufficient to merit a life sentence. The trial court resentenced Brewer to death.

The Texas Court of Criminal Appeals ("TCCA") affirmed Brewer's sentence. *See Brewer v. State*, 2011 WL 5881612 (Tex. Crim. App. Nov. 23, 2011). Brewer then sought state habeas corpus review. The state trial court held an evidentiary hearing and received testimony from Dr. Coons and Brewer's two 2009 trial counsel: Anthony Odiorne and Edward Keith, Jr.

The court entered findings of fact, conclusions of law, and a recommendation that the TCCA deny habeas relief. The TCCA adopted that recommendation in large part and denied relief.[1] *See Ex parte Brewer*, 2014 WL 5388114 (Tex. Crim. App. Sept. 17, 2014).

In March 2020, nearly thirty years after he murdered Robert Laminack, Brewer filed his second amended petition for a writ of habeas corpus in federal district court, asserting fourteen claims for relief.[2] The district court adopted and supplemented the magistrate judge's extensive findings, conclusions, and recommendations, denied all claims for relief, and declined to grant Brewer's request for a COA. Brewer renews his application for a COA in this court.

## II. Standard for Certificate of Appealability

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state court prisoner must obtain a COA before appealing a federal district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A). This is warranted upon a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). In *Miller-El v. Cockrell*, the Supreme Court clarified: "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 537 U.S. 322, 338, 123 S. Ct. 1029, 1040 (2003). As held by the Supreme Court, the grant or denial of a COA turns not on the

---

[1] The TCCA did not adopt two paragraphs of legal conclusions pertaining to a disputed autopsy report, which is not at issue in this petition.

[2] In 2018, Brewer filed a petition for habeas relief in federal district court and moved to hold his case in abeyance while he returned to state court to exhaust state habeas remedies on new claims. *Brewer v. Davis*, 2018 WL 4585357 (N.D. Tex. Sept. 25, 2018). The district court granted the motion, and the TCCA subsequently dismissed Brewer's new claims under state writ-abuse principles without considering the merits. *Ex parte Brewer*, 2019 WL 5420444 (Tex. Crim. App. Oct. 23, 2019).

ultimate merits of a petitioner's claims but on whether "a threshold inquiry into [their] underlying merit" finds the claims "debatable." *Id.* at 327, 336, 123 S. Ct. at 1034, 1039; *see also Buck v. Davis*, 580 U.S. 100, 114–16, 137 S. Ct. 759, 773–74 (2017). Accordingly, this court has made a "general assessment" of Brewer's claims. *Miller-El*, 537 U.S. at 336, 123 S. Ct. at 1039.

And in doing so, this court nevertheless "must be mindful of the deferential standard of review the district court applied to [the habeas petition] as required by . . . AEDPA." *Williams v. Stephens*, 761 F.3d 561, 566 (5th Cir. 2014) (quoting *Miniel v. Cockrell*, 339 F.3d 331, 336 (5th Cir. 2003)) (alteration in original). That standard requires that state-court decisions "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010). To prevail, the petitioner must prove that the adjudication by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, a "state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 786–87 (2011). Further, "the federal court may review the claim based solely on the state-court record." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022). "The petitioner carries the burden of proof" to overcome this standard, known as "AEDPA deference," which is "difficult to meet" by design. *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398 (2011).

No. 22-70006

## III. Discussion

Brewer raises three ineffective assistance of trial counsel claims in this court: *first*, that his 2009 counsel failed to properly challenge the state expert's testimony on future dangerousness; *second*, that counsel neglected to develop and present a mitigation defense; and *third*, that counsel did not adequately investigate and rebut the state's evidence of his prior bad acts.

To establish that he was denied constitutionally effective assistance of counsel, Brewer must demonstrate that "(1) counsel's representation fell below an objective standard of reasonableness and . . . (2) there is a reasonable probability that prejudice resulted." *Druery v. Thaler*, 647 F.3d 535, 538 (5th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984)). "Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams*, 761 F.3d at 566–67 (citing *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65). For the first prong, Brewer "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation mark omitted). To show prejudice, Brewer "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. This "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189, 131 S. Ct. at 1403 (quoting *Richter*, 562 U.S. at 112, 131 S. Ct. at 791).

A federal court's review of a state court's adjudication on the merits of an ineffective assistance of counsel claim is "doubly deferential" because we "take a highly deferential look at counsel's performance [under

*Strickland*] through the deferential lens of § 2254(d)." *Id.* at 190, 131 S. Ct. at 1403 (internal quotation marks omitted).

### A. Expert Testimony on Future Dangerousness

Brewer argues that his 2009 trial counsel were ineffective for failing to timely object to the expert testimony by Dr. Coons that he constituted a future threat to society. Brewer contends that because the TCCA later held Dr. Coons's testimony inadmissible in *Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010), it likely would have done the same in this case had a timely objection been made.

The state habeas court found that although counsel failed to preserve an objection to Dr. Coons's testimony for appellate review, counsel reasonably strategized to prevent Dr. Coons from testifying by attacking his methodology at an evidentiary hearing.[3] The court found further that counsel's performance must be "measured against the law in effect at the time of trial," and *Coble* was decided the year *after* Brewer's 2009 retrial. By 2009, Dr. Coons had testified in at least sixteen Texas judicial proceedings on the special issue of future dangerousness, including Brewer's 1991 trial. *Coble* marked the first time that Dr. Coons's testimony had been deemed inadmissible.[4]

---

[3] During the voir dire, Brewer's counsel elicited admissions from Dr. Coons that he has a "different definition of criminal act of violence than other people in this field," that he has never performed "any follow-up . . . to determine whether or not [the] predictions were accurate," and that he had not interviewed Brewer in this particular case.

[4] In fact, Coble's counsel were ultimately unsuccessful, because the TCCA held the admission of Dr. Coons's testimony there was harmless error. As an aside, the district court stated that the TCCA's "primary reason" in *Coble* for holding Dr. Coons's testimony inadmissible "was because Dr. Coons had not evaluated the defendant for 18 years before he testified." (citing *Coble*, 330 S.W.3d at 279–80). More completely considered, the TCCA found a number of additional significant deficiencies in Dr. Coons's

No. 22-70006

Thus, the district court concluded that Brewer's counsel cannot be faulted for lacking the "clairvoyance" "to follow the same strategy that had proved unsuccessful during Coble's . . . retrial." Of course, "[c]lairvoyance is not a required attribute of effective representation." *United States v. Fields*, 565 F.3d 290, 295 (5th Cir. 2009). Reasonable jurists could not debate the district court's conclusion that the state courts did not act unreasonably in holding that trial counsel were not ineffective for failing to make what at that time would have been a futile objection to the introduction of Dr. Coons's testimony.

Brewer also alleges that his counsel were ineffective for failing to rebut Dr. Coons's testimony with an alternative expert opinion on his future dangerousness. Specifically, Brewer argues that counsel should have enlisted Dr. Mark Cunningham, who had previously examined Brewer, or Dr. John Edens, the defense's forensic psychologist, to evaluate Brewer afresh.

The state habeas court found that Brewer's counsel executed a "reasonable and plausible" strategy to counter Dr. Coons's testimony: Trial counsel would "attack Dr. Coons's testimony and methodology on cross-examination," and Dr. Edens would "rebut Dr. Coons's testimony on direct examination." The court articulated several reasons supporting counsel's decision to forego an independent expert evaluation of Brewer. These included: (1) the state would then have been entitled to have its own expert examine Brewer; (2) the state would likely have attacked the defense expert's evaluation, "which would reflect poorly on [Brewer] and distract from the defense's attack on Dr. Coons"; and (3) the jury may have viewed "the

---

testimony, such as Dr. Coons's failure to cite any "books, articles, journals, or even other forensic psychiatrists who practice in this area," and the dearth of any "objective source material in [the] record to substantiate Dr. Coons's methodology." *Coble*, 330 S.W.3d at 277.

defense expert in the same light as Dr. Coons" or "become lost in the science." Ultimately, Brewer's counsel opted to focus the jury's attention on the fact that Brewer had not engaged in any violent criminal activity during his 18 years of incarceration on death row as the "best evidence" that Brewer "was not a future danger."

Finally, the state habeas court held that even if counsel's strategy to challenge Dr. Coons's testimony was unsound, and despite any error in preserving an objection for appeal, Brewer has not shown that he was likely prejudiced as a result. Specifically, the court concluded that the brutal facts of the capital murder offense, in addition to several violent episodes from Brewer's adolescent and adult years, independently supported the jury's verdict on the future dangerousness special issue. Importantly, the 2009 trial jury heard eyewitness testimony from both Brewer and Nystrom, who provided detailed and consistent accounts of the gruesome murder—evidence not presented at the 1991 trial.

Additionally, the state court found that Dr. Coons's testimony was "not particularly powerful, certain, or strong" because, among other things, Dr. Coons admitted before the jury that he had no "statistical data" or "research to support his opinion" and that he rarely, if ever, followed up "to determine if his predictions were accurate." Moreover, Dr. Edens "effectively rebutted and refuted" the methodological flaws underlying Dr. Coons's conclusions regarding "predictions of future dangerousness." Dr. Edens emphasized that the predictions are not borne out with any statistical significance in the behavior of death row inmates. He also recounted his voluminous scholarship on the subject, as juxtaposed against Dr. Coons's scant *curriculum vitae*. Thus, the court concluded that neither the absence of Dr. Coons's testimony nor an independent expert evaluation submitted on Brewer's behalf would likely have changed the result.

Reviewing these findings and the magistrate judge's recommendation, which it adopted, the district court held that the state court reasonably concluded that counsel's 2009 trial strategy as to Dr. Coons was reasonable under *Strickland*. The district court alternatively found the state court's rejection of prejudice to be reasonable under *Strickland*, especially considering the jury's opportunity to assess Brewer's credibility in light of the eyewitness description of the crime's brutality. No reasonable jurist could find the district court's assessment debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).

## B. Mitigating Evidence

Brewer's second ineffective assistance claim is based upon his counsel's alleged failure to investigate potentially mitigating evidence or prepare an effective mitigation defense. The Supreme Court has interpreted the Sixth Amendment to require defense counsel "to make reasonable investigations [into potential mitigating evidence] or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003) (quoting *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066). Brewer argues that he likely would not have received the death penalty a second time if the jury had seen additional evidence of his troubled childhood coupled with the results of a mental health evaluation.

Specifically, Brewer asserts that an adequate investigation would have produced additional mitigating evidence of neglect by his mother during his infancy, traumatic incidents of sex play with a male friend and sexual abuse by a babysitter, and the "full extent" of his biological father's "violence and depravity." He alleges further that his counsel should have submitted a mental health evaluation, like that performed on him in 1996 by Dr. Cunningham, to show that Brewer suffered from mental illness.

Brewer bolsters this claim with a new declaration from 2009 trial counsel Odiorne, in which Odiorne states "that the defense team did no investigation of Mr. Brewer's mental health."

As an initial matter, neither Dr. Cunningham's 1996 mental health evaluation nor Odiorne's declaration were part of the state habeas record. Because this claim was adjudicated on the merits by the state court, this new evidence is barred from federal court consideration under *Cullen v. Pinholster*. 563 U.S. at 181, 131 S. Ct. at 1398. Further, the declaration is wholly inconsistent with Odiorne's testimony before the state habeas court, and, as such, is "viewed . . . with extreme suspicion." *Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005) (collecting cases).

In rejecting Brewer's claim, the state habeas court found that his 2009 counsel properly investigated and presented strong mitigating evidence. With the assistance of in-house investigator Rob Cowie, counsel investigated and developed a mitigation defense by reviewing the 1991 trial transcript along with trial counsel's notes and by traveling to Mississippi to interview Brewer's mother and sister, both of whom testified.

The court found that the jury heard evidence of Brewer's troubled childhood. Specifically, counsel presented evidence that Brewer's biological father, Albert Brewer, was absent during Brewer's formative years. Brewer's step-father, whom his mother married when Brewer was four years old, "would repeatedly beat him with an extension cord or a belt," so Brewer "would often run away from home for months at a time in order to get away from his step-father." The jury also learned that Brewer "was diagnosed with scoliosis" when he was eleven years old, which required extensive surgery, three weeks in the hospital, and eight weeks in a body brace. Because this condition prevented him from "playing his beloved sports," he began "hanging out with 'stoners' and using drugs when he was about twelve years

old." Counsel also presented evidence that Albert, who had rejoined the family when Brewer was fifteen, was "mean, violent, and abusive" to Brewer and his mother. Albert nearly broke Brewer's nose with a piece of wood on one occasion, and Brewer beat Albert with a broom on another "to stop Albert from hurting" Brewer's mother. Following "the broom incident," Brewer moved cities to live with his grandmother and continued his drug and alcohol use. While with his grandmother, Brewer wrote a suicide note and was subsequently committed to a state hospital. The state court also found that Brewer's counsel presented mitigating evidence to show that Brewer had been an exemplary inmate in jail and for eighteen years on death row.

The habeas court concluded that the unoffered mitigating evidence would have been cumulative of the evidence already presented. *United States v. Bernard*, 762 F.3d 467, 476 (5th Cir. 2014) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064) ("A plea for 'more of the same' does not, in the circumstances of this case," show that counsel "were not functioning as counsel guaranteed to [petitioner] by the Sixth Amendment."). Thus, Brewer could not show how he was prejudiced by its absence. *See Howard v. Davis*, 959 F.3d 168, 173 (5th Cir. 2020) ("Cumulative testimony generally cannot be the basis" of an ineffective assistance of counsel claim.); *Norman v. Stephens*, 817 F.3d 226, 233 (5th Cir. 2016).

The district court approved the state court's implicit finding that counsel reasonably decided an expert mental health evaluation would have been unnecessary and even harmful to Brewer's case. The same sound strategy undergirding counsel's decision to forgo an expert examination on future dangerousness also supported the decision to refuse a mental health evaluation. Further, "[t]here is no suggestion in the record that Petitioner suffers from an intellectual disability or that he functions anywhere below the average range of intellectual functioning. Petitioner's mental-health records . . . introduced during his 2009 retrial showed no mental-health referrals

despite his suicide attempt." With regard to prejudice, the court emphasized that given the "graphic and grisly" testimony by Brewer and Nystrom, along with the state's other evidence, there is not a "substantial likelihood" that a mental health evaluation or additional evidence from Brewer's childhood would have influenced the jury's balancing of the aggravating and mitigating factors. *See Bernard*, 762 F.3d at 476.

Reasonable jurists could not debate the district court's conclusion that, as evidenced in extremely thorough opinions by the state court and magistrate judge, the state court reasonably applied *Strickland* in holding that trial counsel were not ineffective in preparing and presenting a mitigation defense.

## C. Prior Bad Acts

Brewer's final ineffective assistance claim is that his trial counsel failed to adequately investigate and rebut the state's evidence of his future dangerousness. Brewer presented a similar claim in his subsequent state habeas application, which the TCCA dismissed as an abuse of the writ without considering the merits. *Ex parte Brewer*, 2019 WL 5420444 (Tex. Crim. Ap. Oct. 23, 2019). Thus, this claim, or portions of it, are barred by the doctrine of procedural default. *See Ramirez*, 142 S. Ct. at 1732 ("[F]ederal courts generally decline to hear any federal claim that was not presented to the state courts consistent with [the State's] own procedural rules." (internal quotation marks omitted, alteration in original)). Nevertheless, the district court "cut straight to the merits to deny his claim," rather than decide whether Brewer could overcome his default. *Murphy v. Davis*, 901 F.3d 578, 589 n.4 (5th Cir. 2018).

The Supreme Court has held that constitutionally deficient assistance can take the form of failing "adequately to investigate the State's aggravating evidence, thereby foregoing critical opportunities to rebut the case in

aggravation." *Andrus v. Texas*, 140 S. Ct. 1875, 1881–82 (2020); *see also Rompilla v. Beard*, 545 U.S. 374, 385, 125 S. Ct. 2456, 2465 (2005). Brewer points to three "prior bad acts" from the state's aggravation case: (1) an assault against his high school girlfriend that dislocated three discs in her spine and temporarily paralyzed her arm; (2) an arrest for possessing a concealed knife in Florida; and (3) the assault against Albert with a broom handle, which left the man bleeding from the nose, mouth, and side of the head, and led to his hospitalization.[5] Had his 2009 counsel interviewed the witnesses supplying this testimony, argues Brewer, counsel would have been able to garner the evidence needed to undermine the state's case for future dangerousness. Brewer then would not have taken the stand.

Brewer supports this claim with six new declarations, including one by defense investigator Cowie, another by trial counsel Odiorne, and his own affidavit. All of these are barred under *Shinn v. Ramirez*. 142 S. Ct. at 1734 ("[U]nder § 2254(e)(2), a federal habeas court may not . . . consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel."). Further, several should be viewed with "extreme suspicion" for containing statements that are inconsistent with previous testimony. *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996).

The district court found that Brewer's counsel reasonably decided "to rely upon their interviews with him" and "on the sworn testimony of prosecution witnesses when deciding not to interview those witnesses prior to the 2009 trial." The court noted that these witnesses testified at Brewer's

---

[5] Brewer also alleges that his counsel failed to investigate a fight he had with a former inmate, in which Brewer threatened to shove a pencil in the man's eye. It does not appear that the state submitted any evidence of this fight at Brewer's 2009 trial. If so, Brewer's counsel cannot be faulted for failing to rebut aggravating evidence never seen by the jury. Regardless, the district court found that an interview with the inmate would not have softened the severity of Brewer's threat.

1991 trial and gave the same or very similar testimony at his 2009 trial, so the additional details that could have been gleaned from fresh interviews would have been minor. Taking them one by one, the district court found first that even if a new interview with Brewer's high school girlfriend revealed that the assault was out of character and that he did not intend to hurt her, the testimony of the severe injury he inflicted upon her would remain unchanged. Next, any new evidence gleaned from an interview with the alleged owner of the knife for which Brewer was arrested in Florida would have been cumulative. Similarly, the district court found that additional evidence of Albert's "violence and depravity" would have been cumulative.

The district court then emphasized that the state's case in aggravation was significantly stronger in 2009 than it was in 1991, given Nystrom's eyewitness account of the murder. The district court concluded that the decision to put Brewer on the stand to show the jury his remorse, empathy, and non-violence during incarceration, rather than to quibble with minor details of the prosecution's witnesses' testimony, was an eminently reasonable one.

"There are countless ways to provide effective assistance in any given case," and the district court concluded that Brewer's 2009 trial counsel found and employed one. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Reasonable jurists could not debate the district court's assessment of this claim.

For the foregoing reasons, Brewer's request for a COA is DENIED.